We'll call our next case. Both lawyers that are going to argue would step up and identify yourselves for the record. Tom Gonzales on behalf of the appellant, Sandra Kidd. Mr. Gonzales. Good morning, Your Honors. This is the State's Attorney Iris Spuros, and I have 15 minutes. Spuros. Each of you will have approximately 15 minutes for your arguments, and Mr. Gonzales, you may save up some time for rebuttal. Okay, thank you. Good morning, Your Honors. May it please the Court. Again, Tom Gonzales on behalf of the appellant, Sandra Kidd. The trial court abuses this question here by refusing to instruct the jury on lesser-included offensive aggravated assault where the evidence permitted a rational jury to find Kidd that she simply pointed a gun at Johnson but never pulled the trigger. The officer said she did pull the trigger at least three times. He did. But, again, the point here is that a rational jury could have found that that wasn't the case. The State essentially presented two conflicting versions. Half of it was based on Kidd's statement, which, of course, the State fully embraced and made it part of its case. In Kidd's statement, she only mentions that she acknowledges having the gun. She said she had the gun and she pulled it out as she rounded the corner of Burnham and that she simply pointed it in the direction as she was running along Burnham. And the physical evidence as far as the cylinder opening up and the bullets dropping to the ground, the fact that the bullets were found kind of dispersed among a certain course of down Burnham, it pretty much supports that. Did she say the bullets fell out in her statement? She said the cylinder was open. Okay. And that she didn't – there was some question as to whether or not she knew. Yeah. But, again, the physical evidence bears out the fact that – The physical evidence showed that the bullets were, in fact, out on the street. Absolutely. And that when the gun was recovered, there were no bullets in it. Yes, yes, because there was five of them that were recovered, unfired bullets. Right. All out on the street. Cartridges. Cartridges. Well, again, but the cylinder was open as soon as she – I'm just noting the difference between bullets and cartridges. Okay. Okay. But in any event, none of them were fired. Okay. And what's important as far as this particular issue goes is – and I know the state mentions at one point they used statutory construction or statutory – historic statutory comparison when the actual approach is the charging instrument. And basically there's two things that courts look to in determining whether or not an uncharged offense should be given as a lesser included instruction. And one of them is it's based on the indictment itself, and the second is the evidence. Now, pointing to the indictment for a moment, it's basically whether or not this indictment – the greater contains the main outline of the lesser. Okay. And the state suggests in its brief that the fact that it doesn't mention reasonable apprehension is somehow fatal to this charging instrument approach when that's just not the case. What's important here is that the charging instrument charges Kidd with pointing the gun and pulling the trigger. Okay. So certainly the act of pointing a gun, which the court in Kruger and Ross determined, was sufficient. In other words, it's not required that all of the elements of the lesser be explicitly spelled out. It's enough if some of the elements of the lesser can be rationally – yeah, can be reasonably inferred. Oh, because what's the other part of the aggravated assault? Well, the reasonable apprehension of receiving a battery. Receiving a battery. Correct. And here, again, the fact that Kidd was charged with pointing the gun is certainly enough for that. And I mean, that's Ross and Kruger. And the cases that the state cites, Pimble and Jefferson, don't even – those are entirely different. I mean, the dependence of those cases, we're charged with shooting at the complainant. Okay. So that's – so here, I think we have that as far as the question of whether or not the broader sufficiently outlines the lesser. Now, as far as the other part of the inquiry. Why is it such a material difference between those two sets of cases, the shooting, the actual shooting as opposed to pulling the trigger? And when you shoot at somebody, doesn't that – does that place them in apprehension? I mean, Kruger found that. Sure. I mean, but, again, I guess the question with respect to whether or not the greater describes with sufficiency the lesser, well, either one of them or collectively, they would certainly, I think, one could reasonably infer that the recipient on the other end would be in reasonable apprehension of receiving a battery. But the important difference, at least here, is the fact that she was charged with pointing the weapon. I mean, that's classic aggravated assault, pointing the weapon. And so I don't think there's much dispute there. Of course, the other part of the equation is something we started to address here, and that's evidentiary. It's whether or not the evidence supports a finding on the lesser and an acquittal on the greater. And, of course, we maintain that it did. Because, basically, the evidence of intent to kill here, it was a classic he said, she said. The only evidence of the intent to kill as to whether or not he had actually pulled the trigger came from Johnson himself. None of his partners saw what took place on Burnham. And the other part that the she said was she just simply said, I turned the corner, I ran because I thought I was going to be searched, so I took off, I turned the corner. Once I rounded the corner, I pulled the gun out of my pocket, and I went to turn around and look where he was. He was about eight feet behind me. The gun was pointing in this direction. I don't know why it was pointing in his direction. Then she says, he ran into a truck at some point. Of course, the evidence bears out the fact that the cylinder was open, that the bullets started falling out around 78-12, 78-17. There was some more found, the 38, and then I think there was two on the other side of the Durango. But in any case, the physical evidence certainly supports the fact that this cylinder of the gun is hanging open. Also, it's highly questionable as to whether or not, why Officer Johnson wouldn't be able to see that. Officer Johnson says, she was never more than six feet away from me. So to not be able to see the cylinder of a gun hanging open. He did say, I saw objects fall into the ground. So, of course, that turned out to be the bullets. I think another important thing is that certainly the state, I mean, the state charged Kip with aggravated assault. So it seems kind of inconsistent for them to say now that no rational jury would have found her guilty of aggravated assault, when the evidence certainly bears that out. Well, that charge was dismissed before the proceedings before the jury, correct? It was, but, I mean, that's the state's prerogative. I mean, that's... Yeah, but either way, you're pointing out it was there. Yeah, it certainly was. So, I mean, it just seems inconsistent for the state to now say that there was no evidence of aggravated assault. Okay? And I think as far as, I think the court made mention of the fact that it was somehow by sheer luck that this officer wasn't shot. And that's like, well, it also could have been just by the fact that she didn't intend to kill. The bigger question is that, this is a jury question, this should have been put to the jury. Because there was enough here, with her statement and with the officer's testimony that he said she said nature of it, this was a classic case of a question that jury should have been able to decide. So, and I think Johnson's testimony, and I spelled this out in Issue 1 in the opening brief, about just kind of how incredible Johnson's testimony seems to be regarding what this 4'11", 118 pound 17-year-old would just so brazenly actually just pull a gun and fire him at such close range. I think it's certainly not a stretch to say that had the jury been given this important third option, that they could have rationally found that it didn't happen the way Johnson said it did. It's just beyond incredible that not only that she would pull a gun with a cylinder hanging open from basically such a close range, then to be thrown over the car and to do it again as she's getting up from the ground two or three more times. I mean, that's just, at the very least, it's highly questionable. And I think that's what's disturbing about not allowing the jury to do that. It's just a classic case of another important theory that the jury should have had before that. So I think that also affects the defendant's ability to present a defense. I mean, that's what defense counsel was trying to do by asking for this instruction. And the court just kind of basically impeded his ability to do that. So I think that's an important factor. So unless the court has any other questions. Okay. Just summarize by saying the jury should have been given this important third option and the trial court appeased its discretion by not doing so. So, therefore, this conviction should be reversed and amended for a new trial.  All right. You'll have time to rebuttal. Ms. Gonsalves. Ms. Ferrosi. Good morning. Good morning. A.S.A. Iris Ferrosi for the people. Your Honors, defendant fails to even argue that had he been given, excuse me, she been given instruction for aggravated assault that she would have been acquitted of attempt murder. And she also doesn't address through her counsel the fact that there was another option for this jury. Is that, though, the standard? I don't believe that the cases say the defendant has to show they would have benefited from the instruction. I thought the instruction is or the law is that if there's some evidence to support the giving of the instruction, the defendant gets it. Not whether they would have gotten an acquittal. They don't have to show they would have succeeded, do they? No, they don't. All right. And my point is only that defendant has never argued that. And also the defendant Why should they argue if they don't have to show it? Well, they have to show there's some evidence to support the instruction. Right. And they've also failed to argue that the jury had another option of unlawful use of a weapon by a felon. So if they didn't believe this evidence, they could have acquitted the defendant of attempt murder, and they had unlawful use of a weapon by a felon. Is that the unlawful use of a weapon by a felon based on an earlier gun charge? Yes. It's all up for grabs right now? Anyway. Getting off of that. Oh, that's right. It was a cab ride. Yes. Okay. But there's a big difference between UUW by a felon and aggravated assault. I mean, she has a sentence of 40 plus 15 years. Correct. There's a big difference. But the evidence never supported an aggravated assault instruction. Well, what if you take her statement as true? Her statement? You know, we don't have to. We don't have to take it as true. We just have to decide is there enough that would show an aggravated assault? Even taking her statement, that is not enough, because her statement alone is that she's running from the police with a loaded gun, and she's running and turns to see where he is. That is why she turns. Okay. Turns to see where he is and has the gun in her hand, points it at him, and then continues running. Okay. There is nothing in that statement that shows. Isn't that an aggravated assault if he were put in a apprehension of receiving a battery and the gun is being pointed at him? Well, aggravated assault is from the point of the victim, not the intent to scare with the gun. It's from the victim and a reasonable apprehension of receiving a battery. Officer Johnson testified he didn't even know there was a gun until it was pressed against his chest, and he felt something against his chest, and he heard a click. So he had post-click apprehension. So there was no time to have a reasonable apprehension of receiving a battery. Even if what she says is true, that she turned. What happened to circumstantial evidence and inferences that can be inferred from the testimony? Well, you can't infer that he saw the gun when she turned, because he didn't testify that he ever saw a gun when he was chasing her. But her statement suggests that. But her statement doesn't support. We're not here to decide whether what she said was true or not true. That's really not how we review whether there was an error in not giving an instruction. We don't decide how much to believe or whether we should believe. It's whether there's some evidence to justify giving that instruction, and we don't really look at it through a credibility lens. Correct. But even with her statement, there's no reasonable apprehension of receiving a battery, because there's nothing to show that Officer Johnson ever saw that gun being pointed at him. He saw something fall out, and he ran over the bullets or the garbages. Right. When he was chasing her. He saw something fall out, which he didn't know what it was, and I think he said in his testimony he assumed it was, or he thought it was maybe narcotics. He didn't know, and did not know anything about a gun. He's running. He doesn't have his weapon. You're also taking this posture that what he said is the truth. What he said must be accepted, and what she said we don't care about. Now, that's not the law as far as I know. It is not whether we're here to say what he said is true, and the fact that he didn't mention that he saw the gun or he didn't say he saw the gun means that what she said can't be used for purposes of giving the instruction. Well, she doesn't say that he saw the gun. No, she says what she did, and you can infer from that. If somebody says I pointed a gun at somebody else, you can infer that pointing the gun at that person put them in apprehension of receiving a battery. I mean, that's kind of basic. If somebody pointed a gun at me, I'd be in fear of maybe getting shot. So, you know, this isn't a credibility thing. It's about is there some evidence, some, to support the giving of it. That's really the way I understand it. Not about how he necessarily felt, but is there some evidence to support the giving of it. And, you know, you just take what's there, and you decide should the jury get this instruction. Well, even the case law cited by the defendant and by us in our briefs, the court seems to put this as the defendant had an intent to scare. Okay, that's the term. It's an intent to scare. In Ross and Kruger, and I disagree with what counsel just stated, Kruger, that defendant actually fired a gun at a police officer's home, and the police officer's in the window, but he's not firing it at the actual officer. He's firing it at the house. They're saying that's like an intent to scare. Same with Ross. The defendant turned, the police officer's 45 feet away, and that defendant is running towards that officer pointing a gun. Again, that court said it's an intent to scare. You still need some type of evidence to support that the victim knows of this, even though the court counts it as an intent to scare. In Kruger, did the officer know he was in the picture window? Yeah, he's looking out the window. He heard shots. That's correct. But you look at that. So there's three different categories. There's pointing a gun. There's Kruger, which is I'm not pointing it at you, but I'm firing an intent to scare. And then there's the cases I cited, Jefferson, Walker, and Kimball, which are all pointing the gun at the victim and firing that gun in the direction of the victim, so in the direction of that person, not at their house or whatnot. This is actually a new category because it's pointing a gun and pulling the trigger. According to the officer. According to the officer, which the jury believed. And because of his experience and the knowledge of hearing a click of a trigger being pulled, hundreds of times he testified. Had he? Hopefully not. Right. But hearing the sound, being trained as a police officer, and his reaction of hearing this and pushing her over the car, which I should point out there's two cartridges found right at the Durango where he says he pushed her up against the Durango. Two cartridges there. He pushes her over it because he's like, oh, my God, she's got a gun. Pushes her over. There's two cartridges found on the other side of that Durango. Which argument, you could say when she first pulled that trigger at his chest, that gun was likely still loaded, and it was a game of Russian roulette with her. You're saying the cartridge fell out at 78th Street or whatever, 7800. Yes. Then went back in the gun and then fell back out again. No, no, no, no. Right. There's one on the street where she's running. There's two on the street side of the Durango. There's two there. So the revolver's still open. Revolver's still open. He pushes her over onto the grassy median or whatever it's called, not median, the grassy area. Parkway. Parkway, thank you. And there's two more found over there. So the only way those two got over to the other side of that Durango is they were still in the gun when he pushed her over. Meaning? Revolver. Revolver. Right. Yes. So when she first pointed that gun to his chest and heard the click, there were still arguably bullets in that gun. So defendant's whole argument about there's no intent to kill, and she's so diminutive and so tiny, and how could this be? This is so ridiculous. She had an intent to kill because she knew this gun was loaded. When she first received it, she's running from the police. One bullet fell out, which arguably she has no idea. She's running from the police, and she's repeatedly pulling the trigger. We can't just ignore it. Did he say three times or two? There was the first click in the chest, and then he said two to three more times after he pushed her over the Durango. So this repeatedly, why are you pulling the trigger if you don't have an intent to kill? There's no reason. And there's nothing to indicate. She stopped at any point and looked into this weapon to see if the bullets were still in there. Granted, her statement was she wasn't sure, but, I mean, because she's pulling the trigger, nothing's happening. So to say that just because of her size that she is incapable of this, she's being a lot more quicker with this trigger than Officer Johnson, who, but for the grace of God, these bullets had been falling out and it wasn't shot that night. So to categorize it as impossible or unlikely, or I think she says implausible in her brief, his testimony is incredible, the evidence actually supports, that was found on the scene, supports exactly what he was saying, that there's a bullet on the street where they ran, there's two bullets by the Durango where he pushed her up against that car, and two on the other side, and then, let's not stop there, he's now got his service weapon out and he shoots her, and she will not drop that gun. He tells her, drop the gun, she won't drop it. In her statement, does she ever suggest that there was some tussle and she was thrown over a car, or does she give us a completely different scenario? A completely different scenario. So under her scenario, the bullets could have still come out the way she said as she was fleeing, right? Well, in her scenario, she doesn't go near that Durango. So her statement doesn't account for the four bullets found around this Durango. She says that the police officer, Johnson, runs into a car and that she keeps going down the street. So it actually, the evidence that was found doesn't support what she was saying because then all the bullets would just have been in a line in the street. But they were, excuse me, the cartridges, but they were found on either side of that Durango. So it actually refutes what she says. And after being told repeatedly to drop that gun, and the officer's like, listen, I'm going to have to shoot you, and she finally drops it, not wanting to give up that gun. And then what does she say? She says in her statement that she tells the police officer, Johnson, she's sorry, and also said when he testifies, he asks, why did you just try to shoot me? And she says, they sent me off. So the statement can be inferred to as indicative of guilt, that she knew she was doing something other than pointing a gun at the police officer. So I think the evidence in the light most favorable to the prosecution definitely proved her guilty beyond a reasonable doubt. And also, the trial court correctly did not give that aggravated assault instruction. And I might add, too, just in the indictment, the defendant's argument does not have a main outline for aggravated assault. So you're not agreeing to that? No, I'm not, absolutely not. Because while the defendant wants to just look at,  which our argument is takes it out of the realm of aggravated assault. When you pull the trigger, that takes it out of the realm. Okay, but again, though, in her version, she doesn't say pull the trigger. So if the case law says you decide whether there's some evidence, you don't look at who's telling the truth or who gave the most accurate account. The question is, does that evidence support it? Not, again, you know, is he more believable or is she more believable, but does the evidence support the giving of that instruction? Correct. And as I stated earlier, the evidence doesn't support even going by her statement that there was any reasonable apprehension of receiving a battery by Officer Johnson, nor does she show that she has this intent to scare, because according to her, she's just kind of running and turns and happens to have that gun in her hand. So there's not even that intent to scare that the courts have used. The sentencing hasn't been argued here, but I have a question. Under this sentence, the 40 plus the 15, is that one of those 40s where it's 85%? I believe so, yes. It's 85%. And what about on the 15? It's the same. Okay, so under the sentence that she received for this attempt murder, she's going to be doing somewhere in the neighborhood of what? Oh, geez. Twice the minimum for murder, true? Well. Or maybe I'm saying it wrong, but 40 is two times greater than 20. Yes. All right. But the sentencing range is 20 to 60. Yes, right, the sentencing range is 20 to 60. And just to briefly touch on the sentencing, the trial court obviously did consider all the aggravation and mitigation. Repeatedly the defendant argued about her young age, her small size, her family being supportive, and that there's nothing to indicate the trial court did not consider that in sentencing and also repeatedly stated the severity of the crime, the fact that Officer Johnson was lucky to have his life, and also the evidence presented by the state of the prior felony and the incident that occurred in Cook County Jail where the defendant held down a correctional officer after punching her while the other inmates beat on her and caused a concussion. And the defendant has not touched on the Zare argument, and I would just like to say that that is pretty established.  And I don't know if that's been abandoned because it hasn't been discussed. You mean here at Orals? Well, there was no argument in the reply brief and no discussion in the Orals. I don't think that holds sway for abandonment. Okay. But he didn't discuss it, so we don't really need you to discuss it. Okay. Then I won't, and I'll just leave it with we asked. I just wanted to ask, where does this intent to scare language come from? I mean, I know it's in the appellate cases, but I understand how the intent to frighten could bear on the question of proof beyond a reasonable doubt of the intent to kill, but I don't see where this comes from in terms of where this intent to scare comes from in terms of the lesser included offense analysis. I mean, it's not in the statute. It's not a requirement of the aggravated assault. Like you said, it's the opposite. Right. It's the victim's point of view. I believe in those cases it was almost like a contrast to intent to kill because in those cases the defendant was only given a attempt murder instruction and not an aggravated assault. So I believe that it was just to kind of distinguish it, but I agree. I mean, the state is not required to prove an intent to scare. It's just the reasonable apprehension of receiving a battery. But my reading of the case law is just to kind of contrast it with an intent to kill to show, hey, this could be an intent to kill or an intent to scare based on the evidence. That explains it. But no way am I arguing that we should have to prove an intent to scare. And in this case clearly showed an intent to kill, which the jury found the defendant guilty of. So I would ask that you please consider the arguments in my brief and in the oral today and affirm the defendant's conviction. Thank you. Thank you. Mr. Gonzalez? Yeah, I was kind of wondering the same thing myself. I'll limit my remarks just to the current issue. I think we pretty much spelled out in the briefs as far as the sentencing issue. But, again, I don't see any point in the law that says that the defendant has to say, hey, I intend to scare you or that there has to be a charge to that effect. I mean, aggravated assault, putting a weapon at someone is classic aggravated assault. That's a very definition. I mean, the element of reasonable apprehension, I mean, that's textbook. That's aggravated assault. I don't know what much more. Go ahead. Pretty much I think you're, you know, point there. If you end up hitting the person or striking them or, you know, if there's some kind of physical injury, then we've moved away from the aggravated assault to just, you know, your basic battery. Although I'm not comparing this to that. I'm just saying, you know, here we have an attemper. But as you put it out, Justice Breyer, I mean, the standard is just slight evidence. Is there some if it's slight? And here, I mean, there's unquestionably slight. I don't know how there's no other formula for it. I mean, her testimony or her statement, I should say, which, again, that's a big part of the state's case. It was basically conflicting theories. It was the officer's word against hers. It's simple as that. The state just told us, made the point that if you accept her statement, then there's no evidence that he knew she had the gun, that he saw the gun. And so if you have to be placed in apprehension and there's no evidence that he saw the gun, how is it that he's in apprehension, as there are? Well, he's apprehended. As opposed to the other cases where there's a gunshot, at least you hear the gunshot or the bullet goes whizzing by your head. Well, his apprehension is by virtue of the fact that he felt something against his chest. Is it his reasonable apprehension? Are we talking about a subjective belief or are we talking about an objective belief? A reasonable person. I don't know. It sounds like the state's saying he has to be the one. So, in other words, it's a subjective belief that he has. I don't know if that's really the law. Well, I think for purposes of this issue, it's just whether or not a rational jury could have made that conclusion. I mean, as far as, well, when was his apprehension a fair? Well, she testified a couple of times and the officer. Well, the statute says, correct me if I'm wrong, the statute says knowingly placed the victim in reasonable apprehension. Right, which sounds like it's from the defendant's perspective. Well, yeah, but in order, the victim has to have apprehension. Correct, right. Placed him in apprehension. So the victim's got to actually apprehend danger. But the jury could infer that that was shown by the fact that he threw her over the car. I mean, whether this whole issue. You know that physical evidence? How do you explain that away, that the bullets are found on either side of that car? Well, I think the bigger point is that three of them were found further north. I think I've got the address written down here, 78-12-78-17. So we know that's some distance further north. And she, of course, was running south. Okay. So they're saying that there were two bullets on either side of the. . . The Wrangler. Yeah. But, again, the bigger point is that the cylinder was open. Well, one way or the other, the record would reflect definitively where those bullets were found. Well, they were found, the northernmost point, again, being 78-12-78-17 through 78-21, which is where he caught up with her, which is where she supposedly turned around and pushed this gun up against his chest and pulled the trigger twice. The apprehension, of course, would be shown by, the jury could conclude, was by virtue of the fact that he threw her over the car or threw her over the truck. And this whole notion about, well, post-click, pre-click, I mean, as Justice Taylor pointed out in Kruger, the officer there didn't know. He was just getting up to change the channel. He was clearly visible behind those sheer blinds, and the guy opens fire. Of course he didn't know. How is this. . . Well, you can infer by circumstantial evidence he was a gunshot. Well, and the court in Kruger said as much as, well, whether or not it was just by sheer luck or by virtue of the fact that he was too drunk or by virtue of the fact that he was a bad shot, who cares? The point is that it's for the jury to decide. It's still slight evidence the jury could have found that the defendant in Kruger just shot at the house, even though the victim was clearly visible behind the sheer blinds. He just shot up the house with no intent to kill. I don't see how this is any different. They could have found that, okay, she knew that the cylinder was open. Is your only argument to the broad outline that because there was a previous charge that the state. . . They're saying there is no broad outline of aggravated assault because there's nothing in there to say, you know, reasonable apprehension of receiving a battery. Okay, there doesn't need to be. Ross says that certain elements can be reasonably inferred. What it does charge, and my point on. . . The cases seem to be a little bit divergent, don't they? I don't believe so. No. I think it's whether or not the broader charge of the lesser is outlined in that greater. And my point is that there is an explicit allegation that she pointed the weapon. That is in there, yes. They're talking about the latter part about reasonable apprehension of receiving a battery. No, Ross and Kruger both say that that's an element that could be reasonably inferred. As you pointed out, Justice McBride, if you point a gun at someone, someone points a gun at me. I think it's pretty rational to infer, hey, I'm in apprehension of a battery. I don't think that the charge certainly doesn't need to explicitly spell that out. The defendant doesn't necessarily have to say, hey, officer, I put you in reasonable apprehension. Hey, I intend to scare you. There's no requirement of that. The point is whether or not there was that slight evidence that there was enough there to put before the jury. And our position is that there certainly was. I mean, certainly reasonable doubt and who's telling the truth more and all of that stuff, that begs the issue. The point is whether or not there was enough here. And certainly just by virtue of the competing stories that he said, she said nature of it. I mean, that's classic. I mean, the jury should have been, that question should have been for the jury to decide. Okay. Anything else you want to add? No, I'm just looking over. All right. No, unless there are any other questions. No, this was well-argued, well-briefed, and we will take it under advisement. Thank you both. Thank you.